Opinion issued
March 31, 2011



In
The

Court of
Appeals

For
The

First District
of Texas

————————————

NO. 01-10-00066-CR

———————————

KENDRICK
BENJAMIN, Appellant

V.

THE STATE OF TEXAS, Appellee



 



 

On Appeal from the 182nd District Court 

Harris County, Texas



Trial
Court Case No. 1202897

 



 

 

MEMORANDUM
OPINION

          After
the trial court denied his motion to suppress evidence, appellant, Kendrick Benjamin,
pleaded guilty to the offense of possession with intent to deliver a controlled
substance, namely, cocaine weighing more than 4 grams and less than 200 grams.[1]  Pursuant to the State’s punishment
recommendation, the trial court sentenced appellant to 25 years in prison.  In three issues, appellant challenges the
trial court’s denial of his motion to suppress evidence.

          We
affirm. 

Background

Officer J. Aguirre, a
narcotics officer with the Houston Police Department, received information that
a black man was trafficking crack and powder cocaine.  The officer learned that the man lived at a
motel, the Red Carpet Inn, and was using a cream-colored PT Cruiser to deliver
the narcotics.  

Officer Aguirre went to the
motel and noticed the cream-colored PT Cruiser in the motel parking lot.  Later that day, Officer Aguirre observed the driver
of the PT Cruiser turn into the parking lot of the Houston Inn and Suites
without signaling his intent to turn, which is a traffic violation.

Officer Aguirre then
notified marked patrol units of the traffic violation and the location of the vehicle.  Houston Police Officers J. Morin, A.
Gonzales, and Leija, uniformed patrol officers, responded to the call and
initiated the traffic stop.  

Officer Morin approached the
passenger side of the vehicle and Officer Gonzales approached the driver’s
side.  As he approached, Officer Morin
observed the driver, later identified as appellant, shove something into the
right pocket of his shorts.  Because he
was concerned for officer safety, Officer Morin informed Officer Gonzales that
he had seen appellant shove something into his pocket.  

Officer Gonzales removed
appellant from the car.  For officer
safety, Officer Gonzales conducted a pat-down of appellant.  The officer felt a bulge in appellant’s right
front pocket.  The officer asked
appellant what was in his pocket. 
Appellant responded, “You got me officer; it’s crack.”  Officer Gonzales removed a plastic bag from
appellant’s pocket.  The bag contained
what appeared to the officers to be crack cocaine.  

Two passengers were also in
the car with appellant.  They were his
wife, Kimberly Sue Mays, and his three-year-old son.  Officer Aguirre spoke to Mays and learned
that she and appellant were staying in room number 171 of the Red Carpet Inn.  Mays said that the room was registered in her
name.  Mays gave Officer Aguirre her
written consent to search the room.  

When Officer Aguirre
informed appellant that Mays had consented to the search, appellant told the
officer that there was more cocaine in the room.  Appellant told Officer Aguirre where to look
in the room to find the narcotics. 
Appellant also stated that the cocaine in the room was his and that Mays
had no involvement with the drugs.  

Mays accompanied Officer
Aguirre to the motel room and provided the officer with the room key.  Officer Aguirre entered the room and
recovered a perfume bottle from the pocket of a fleece jacket hanging in the
closet.  The perfume bottle contained two
plastic bags.  One bag contained crack
cocaine, and the other contained powder cocaine.  

Officer Aguirre conducted
field tests on the substances recovered from appellant’s pocket and from the
motel room.  It was determined that the
substance recovered from appellant’s pocket was 8.3 grams of crack
cocaine.  The substances recovered from
the motel room were 10.8 grams of crack cocaine and 24 grams of powder cocaine.
 Appellant was indicted for the offense
of possession with intent to deliver a controlled substance, namely, cocaine
weighing more than 4 grams and less than 200 grams.  See Tex. Health & Safety Code Ann. §§
481.102(3)(D), 481.112(d) (Vernon Supp. 2010). 


Appellant filed a written motion to
suppress the cocaine recovered from his pocket and from his motel room.  In his opening brief, appellant summarizes
the basis of his motion to suppress as follows: 

[Appellant] argued there was not probable cause to stop
the appellant’s motor vehicle and search his person.  [Appellant] also argued that the subsequent
discovery of cocaine in his motel room was unlawful because evidence was found
as a result of custodial statements made by appellant and his wife without the
benefit of their Miranda warnings.

 

          The trial
court held a hearing on the motion to suppress. 
The trial court did not hear oral testimony; rather the trial court
determined the motion to suppress based on opposing affidavits and the argument
of counsel.   See Tex. Crim. Proc. Code
Ann. art. 28.01, § 1(6) (Vernon 2006) (providing that, “[w]hen a hearing
on the motion to suppress evidence is granted, the court may determine the
merits of said motion on the motions themselves, or upon opposing affidavits,
or upon oral testimony, subject to the discretion of the court”).  In support of his motion, appellant offered
his affidavit and the affidavit of his wife, Kimberly Sue Mays.  The State submitted the affidavits of
Officers Aguirre, Morin, and Gonzales.  

          At the hearing,
appellant asserted that the police officers stopped appellant based on an
anonymous tip.  He argued that such tip
was inadequate to supply the reasonable suspicion required to initiate the stop.  Appellant also asserted that the officers
should have advised appellant of his legal rights before questioning him
because the questioning constituted custodial interrogation.  

          The trial
court denied appellant’s motion to suppress. 
In support of the ruling, the trial court made the following oral
findings:

[I]t’s pretty clear from the affidavits that there was an
ongoing—they were
watching Mr. Benjamin from a tip; but I also believe that the affidavits
indicate that there was a traffic stop, which I think allows them to legally
stop him and, in fact, arrest him for that traffic violation.  And, so, whether or not there was an
interrogation or not at that point in time, I’m not making any findings with
regard to that because I think they could arrest him and search him incident to
the arrest and find the contraband that was in his pocket at that time.

 

          So, in
addition to that, I think that the consent to search given by the wife appears
to be lawful and the room was in her name. 
So, I’m going to admit that and deny the Motion to Suppress with regard
to that, too.

 

After the trial court denied the
motion to suppress, appellant pleaded guilty to the offense of possession with
intent to deliver a controlled substance, namely, cocaine weighing more than 4
grams and less than 200 grams.  As
recommended by the State, the trial court sentence appellant to 25 years in
prison.  In three issues, appellant
challenges the trial court’s denial of his motion to suppress.

A.      Standard and Scope of Review

We review a trial court’s
ruling on a motion to suppress evidence for abuse of discretion.  See
State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).  We reverse the trial court’s ruling only if it
is outside the zone of reasonable disagreement.  See id.
 

In conducting our analysis,
we must view all of the evidence in the light most favorable to the trial court’s
ruling.  See State v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).
 We give almost total deference to a
trial court’s express or implied determination of historical facts and review
de novo the court’s application of the law of search and seizure to those
facts.  See id.  When, as here, the
trial court determines the motion to suppress based solely on competing
affidavits, we defer to the trial court’s determination of historical facts.  See
Manzi v. State, 88 S.W.3d 240, 243–44 (Tex. Crim. App. 2002).  We, however, review de novo the court’s
application of the law to the facts.  Wiede v. State, 214 S.W.3d 17, 25 (Tex. Crim.
App. 2007).  We must uphold the trial
court’s ruling if it is supported by the record and correct under any theory of
law applicable to the case, regardless of whether the trial court gave the
wrong reason for its ruling.  See Armendariz v. State, 123 S.W.3d 401,
404 (Tex. Crim. App. 2003).  

B.      Stop and Temporary Detention for Traffic
Violation

          In his first two points of
error, appellant specifically focuses on the trial court’s decision not to
suppress the eight grams of cocaine recovered from appellant’s pocket following
the traffic stop.  Appellant asserts in
his first issue, “[T]he trial court abused its discretion in denying his motion
to suppress 8 grams of cocaine found on his person for the reason the anonymous
tip received by Officer Aguirre did not provide sufficient probable cause for
the appellant’s detention.”  

          To make an
investigatory stop of a vehicle, an officer must have reasonable suspicion; that
is, specific, articulable facts that, when combined with rational inferences from
those facts and the officer’s training, would lead an officer to believe that a
person in the vehicle was engaging in, or is about to engage in criminal
activity.  Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); see also Terry v. Ohio, 392 U.S. 1, 20–21,
88 S. Ct. 1868, 1879–80 (1968).  Temporary detention is lawful if based on
reasonable suspicion that an individual is violating the law.  Ford,
158 S.W.3d at 492.  The reasonable
suspicion determination disregards the subjective intent of the officer making
the stop and instead looks solely to whether there was an objective basis for
the stop.  Id.  When a police officer
makes a stop without a warrant or consent, the State has the burden at a
suppression hearing of proving the reasonableness of the stop.  Id.

          Appellant
contends that the State did not meet its burden to show the reasonableness of
the initial stop of appellant’s car.  Appellant
does not dispute that when a traffic violation is committed within a police
officer’s view, the officer may lawfully stop and detain the person for the
traffic violation.  See Walter v. State, 28
S.W.3d 538, 542 (Tex. Crim. App. 2000); see
also Tex. Code Crim. Proc. Ann.
art. 14.01(b) (Vernon 2005) (providing that “[a] peace officer may arrest an
offender without a warrant for any offense committed in his presence or within
his view”).  Indeed, under such
circumstances, no additional probable cause or reasonable suspicion is
required.  See Walter, 28 S.W.3d at 542. 


          Appellant
also does not dispute that a driver’s failure to signal a turn is a traffic
violation.  See Tex. Transp. Code Ann.
§ 545.104 (Vernon 1999).  Instead, appellant
asserts that the stop was not reasonable because it was based on “information
received from an unknown source whose prior use and reliability was never
established.”  Appellant points to
Officer Aguirre’s affidavit testimony in which the officer stated that he
“received information that a black male suspect was living in the Red Carpet
Inn and was involved in the trafficking of crack and powder cocaine.”  Officer Aguirre further stated that he was
“advised that this black male suspect was using a cream colored PT Cruiser to
make his deliveries.”

On appeal, appellant asserts
that “[w]hile an anonymous tip may justify an investigation, it will rarely
alone establish the level of suspicion required to justify a detention.”  Appellant contends that Officer Aguirre’s
affidavit testimony lacks sufficient detail about the informant and about the
source of the informant’s knowledge to show “the tip [was] reliable and
detention warranted.”  

We agree with the State that
appellant’s argument misses the mark.  As
found by the trial court, although Officer Aguirre was at the scene conducting
a narcotics investigation based on a tip, the tip was not the reason for the
stop.  The State showed through affidavit
testimony that the stop was based on Officer Aguirre’s independent observation
of appellant committing a traffic offense.

In his affidavit, Officer
Aguirre testified, “I observed the same cream colored PT Cruiser turn into the
Houston Inn and Suites parking lot without signaling his intent to turn.  I then advised marked units, Officer Morin,
Officer Gonzales, and Officer Leija, of the traffic violation, car description
and location.”  

Officers Gonzales and Morin
also each testified in his respective affidavit, “I was informed by Officer
Aguirre that a cream colored PT Cruiser had turned into the Houston Inn and
Suites without signaling their intent to turn.” 
Based on the information received from Officer Aguirre, Officers Morin
and Gonzales initiated the traffic stop. 


In sum, the record shows
that the officers stopped appellant’s car based on Officer Aguirre’s
observation of appellant committing a traffic violation, namely, making a turn
without signaling his intent to turn. 
This observation was independent of the information received by Officer
Aguirre regarding appellant’s alleged involvement with narcotics.  We conclude that the record does not support
appellant’s argument that the stop of appellant’s car was not reasonable
because it was based on an anonymous tip. 
For this reason, we further conclude that the trial court did not abuse
its discretion when it denied appellant’s motion to suppress the cocaine recovered
from his person.

          We
overrule appellant’s first point of error. 

C.      Amount of Detail Required to Support
Reasonableness of Stop

In his second point of
error, appellant contends, “[T]he trial court abused its discretion in denying
his motion to suppress the 8 grams of cocaine found on his person for the
reason there was not probable cause to stop [his] motor vehicle for a traffic
offense.”  Appellant contends that the
State did not demonstrate that Officer Aguirre had a reasonable suspicion to
believe that appellant was committing the traffic violation of failing to
signal his turn.  Appellant asserts that
Officer Aguirre’s affidavit testimony was conclusory and failed to articulate
specific, detailed information regarding his observations.  Appellant points out that Officer Aguirre’s
testimony did not show (1) whether appellant was turning right or turning left,
(2) where the Houston Inn and Suites’ parking lot is located in relation to the
Red Carpet Inn, (3) where Officer Aguirre was located when he saw the traffic
violation, (4) what the traffic conditions were, and (5) what Officer Aguirre
did while waiting for Officers Morin and Gonzales to arrive.  

In Castro v. State, the Court of Criminal Appeals explained that the
amount of specific and subjective detail that an officer must give to
demonstrate that a detention is reasonable depends on the nature of the
offense.  See 227 S.W.3d 737, 742 (Tex. Crim. App. 2007).  When the determination of whether an offense
has been committed requires an officer to make a subjective determination, then
the officer must provide a detailed account of his observations to support that
determination.  See id.

The Castro court discussed in detail its earlier decision in Ford v. State.  Id.
at 742–43.  In Ford, the police officer testified, without elaborating, that he
stopped the defendant’s vehicle because the defendant was following another
vehicle too closely.  158 S.W.3d 488, 491
(Tex. Crim. App. 2005).  The Ford court held that the officer’s
conclusory testimony was not sufficient to support a finding of reasonable
suspicion because the offense of following another vehicle too closely requires
an officer to make a subjective determination based on a number of statutory
factors.  See id. at 493–94; see also
Tex. Transp. Code Ann. § 545.062(a)
(Vernon 1999).

In contrast, the offense
involved in Castro was one requiring
the officer to make an objective determination.  See
227 S.W.3d at 742.  There, the officer
testified that the defendant’s vehicle was stopped because the defendant failed
to signal a lane change, which is a traffic offense.  Id.
at 739–40.  In distinguishing Ford, the Castro court explained that “in cases involving offenses such as
failure to signal a lane change, a court can determine whether an officer’s
determination that a driver committed a traffic violation was objectively
reasonable without being presented with a detailed account of the officer’s
observations.”  Id. at 742.  In short, it
explained that “[t]he determination of whether a driver signaled a lane change
is a simple one.”  Id.  

The court further explained,

The only two possibilities in this case are: either the
trial judge believed Deputy Bailey’s testimony that another officer observed
the driver change lanes without signaling, or the trial judge did not believe
that the driver was observed changing lanes without signaling. Based on the
denial of the motion to suppress the evidence, it is clear that the judge believed
the testimony that was presented.  The
trial judge was in the best position to observe the credibility and demeanor of
the witness, and it was not unreasonable for the trial judge to credit Deputy
Bailey’s testimony and conclude that the driver was stopped for a traffic
violation.

 

Id. at 742–43.

 

With respect to our
discussion, the traffic offense of failure to signal a turn is more similar to
the offense of failure to signal a lane change discussed in Castro than the offense of following too
closely discussed in Ford.[2]  As in Castro,
the determination of whether a driver committed the traffic violation involved
here is a simple one.  A trial court can decide
whether an officer’s determination that a driver committed a traffic violation by
failing to signal a turn was objectively reasonable without being presented
with a detailed account of the officer’s observations.  See id.
at 742.  The nature of failure to
signal a turn does not require an officer to make a subjective determination.  See id. 

The trial court’s denial of
the motion to suppress indicates that it chose to believe Officer’s Aguirre’s
testimony that he observed appellant commit a traffic violation by failing to
signal his intent to turn.  See id. at 743.  The trial court was entitled
to credit the officer’s affidavit testimony. 
See id.  Such testimony supports a determination
that the stop was reasonable. 

We conclude that the trial
court did not abuse its discretion in denying appellant’s request to suppress
the cocaine recovered in the motel room on the ground that Officer Aguirre’s
testimony was not sufficiently detailed and specific to show that the traffic
stop was objectively reasonable.  

We overrule appellant’s
second point of error.

D.      Tangible Evidence Obtained as a Result of Alleged
Miranda Violation 

          In
his third point of error, appellant contends, “The trial court abused its
discretion in denying [appellant’s] motion to suppress the cocaine that was
later found in his motel room for reason [sic] that this evidence was
discovered as a result of custodial statements made by the appellant without the
benefit of his Miranda warnings.”[3]  Appellant points out that it is not disputed
that neither he nor his wife had been informed of his or her Miranda rights before the officers
obtained information from appellant or his wife “through subsequent unwarned questions.”  

Although he argues on appeal
that the cocaine found in the motel room should have been suppressed because
his wife was not informed of her Miranda rights,
appellant did not make this argument in the trial court.  Thus, appellant has waived this argument for appeal.  See
Tex R. App. Proc. 33(1)(a); Broxton v. State, 909 S.W.2d 912, 918
(Tex. Crim. App. 1995).  As a result, we
consider only the effect of appellant not being informed of his Miranda rights.  

A defendant’s statements
made during a “custodial interrogation” must be suppressed if the defendant was
not informed of his Miranda rights
prior to making the statements.  See Williams v. State, 270 S.W.3d 112,
136 (Tex. Crim. App. 2008); see also Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon
2005).  A custodial interrogation occurs
when a defendant is in custody and is exposed to words or actions on the part
of the police that the police should know are reasonably likely to elicit an
incriminating response.  Roquemore v. State, 60 S.W.3d 862, 868
(Tex. Crim. App. 2001).  

In contrast, physical
evidence discovered as a result of a statement made in violation of Miranda, or “fruit of the poisonous tree,” see Wong Sun v. United States, 371 U.S.
471, 487–88, 83 S. Ct. 407, 417 (1963), need only be suppressed if the
statement was made through actual police coercion.  See
Baker v. State, 956 S.W.2d 19, 22 (Tex. Crim. App. 1997) (citing Michigan v. Tucker, 417 U.S. 433, 452,
94 S. Ct. 2357, 2368 (1974); Oregon v.
Elstad, 470 U.S. 298, 314, 105 S. Ct. 1285, 1296 (1985)).  Thus, even assuming that appellant’s
statements resulted from custodial interrogation, the cocaine found in the
motel room would need to be suppressed only if appellant’s statements were
obtained through police coercion.[4]  See id.
 

Appellant and his wife each
stated in his and her affidavit that when the traffic stop was initiated, the
officers approached appellant’s car with their guns drawn.  They also each testified that appellant was
initially thrown to the ground and handcuffed. 
However, the record also shows that Officer Morin saw appellant shoving
something in his shorts pocket as the officers approached the vehicle.  Officer Morin’s testimony indicates that,
because of what he observed, the officers were concerned for their safety.  In addition, neither appellant nor his wife
testified that the officers still had their guns drawn at the time appellant
gave his statement regarding the location of the cocaine in the motel
room.  

Appellant stated in his
affidavit that one of the officers told him “to tell them where the drugs were
in the room, so that they would not have to tear the room up.”  Appellant also stated, “I feared for the
safety of my wife and child.  As a result
of this fear for my family, and not believing I had a choice, I felt compelled
to give the officers additional information. 
I then told the officers where the drugs were in the room.  I learned later that my wife signed a consent
to search.”  

Appellant does not, however,
detail any objective facts that would support his alleged subjective belief
that his family’s safety was in jeopardy at the point he gave the statement to
Officer Aguirre regarding the location of the cocaine in the motel room.  Furthermore, appellant’s statement in his
affidavit is contradicted by Officer Aguirre’s testimony in his affidavit.  Specifically, Officer Aguirre testified that appellant
told him where to find the narcotics in the motel room after the he told
appellant that appellant’s wife had given her consent to search the room.  Appellant also told Officer Aguirre that the
narcotics belonged to him and that his wife “had nothing to do with it.”  In other words, Officer Aguirre’s testimony
supports an inference that appellant provided the information regarding the
cocaine in an effort to protect his wife, not as a result of coercion.  

Given the record, the trial
court could have reasonably concluded that appellant’s statement did not result
from police coercion.  The United States Supreme
Court and the Texas Court of Criminal Appeals have held that the fruit of the
poisonous tree doctrine does not apply to mere violations of the prophylactic
requirements in Miranda.  See Baker,
956 S.W.2d at 22; see also Tucker, 417 U.S. at 452; 94 S. Ct. at
2368; Elstad, 470 U.S. at 314, 105 S.
Ct. at 1296.  While a statement taken in
violation of Miranda must be
suppressed, other evidence subsequently obtained as a result of the statement,
i.e. the “fruits” of the statement, need not be suppressed.  See
Baker, 956 S.W.2d at 22; see also
Tucker, 417 U.S. at 452; 94 S. Ct. at
2368; Elstad, 470 U.S. at 314, 105 S.
Ct. at 1296.  Accordingly, we conclude
that the trial court did not abuse its discretion in denying appellant’s
request to suppress the cocaine recovered in the motel room on the ground that
appellant was not informed of his Miranda
rights.

We overrule appellant’s
third point of error.

 

 

 

Conclusion

          We
affirm the judgment of the trial court.

 

Laura Carter Higley

                                                                   Justice


 

Panel consists of
Justices Jennings, Higley, and Brown.

 

Do not
publish.   Tex. R. App. P. 47.2(b).











[1]           See
Tex. Health & Safety Code Ann.
§§ 481.102(3)(D), 481.112(d) (Vernon Supp. 2010).





[2]           We note that both offenses are defined in
Transportation Code section 545.104.  See Tex.
Transp. Code Ann. § 545.104 (Vernon 1999).





[3]        See Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966).





[4]           The trial court did not make a finding
regarding custodial interrogation. 
Nonetheless, we must uphold a trial court’s ruling on a motion to
suppress if it is supported by the record and correct under any theory of law
applicable to the case, regardless of whether the trial court gave the wrong
reason for its ruling.  See Armendariz v. State, 123 S.W.3d 401,
404 (Tex. Crim. App. 2003).