Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



**MEMORANDUM OPINION**

No. 04-11-00392-CR

The **STATE** of Texas,
Appellant

v.

Paul Funston **SANDERS**,
Appellee

From the County Court at Law, Kerr County, Texas
Trial Court No. CR10-1184
Judge Spencer W. Brown, Judge Presiding

Opinion by:  Sandee Bryan Marion, Justice

Sitting:  Karen Angelini, Justice
Sandee Bryan Marion, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  October 12, 2011

AFFIRMED

The State appeals from the trial court's order granting appellee Paul Funston Sanders's pretrial motion to suppress. We affirm.

**BACKGROUND**

The trial court held a hearing on appellee's motion to suppress his arrest and all arrest-related evidence. During the hearing, Sergeant William Hall of the Kerr County Sheriff's Department testified, and the trial court viewed the video recording from Sergeant Hall's dash

video camera.  At the conclusion of the hearing, the trial court granted the motion to suppress and issued findings of fact and conclusions of law stating, in pertinent part:

> 8. The court concludes that the information relayed by the unknown caller or callers to dispatch was insufficient to give Sgt. Hall reasonable suspicion to stop [appellee].
>
> 9. The court further concludes that the facts observed by Sgt. Hall were insufficient to give him reasonable suspicion to stop [appellee] because the brief movement whereby the left wheels of [appellee]'s vehicle drifted into an adjacent lane of traffic was not dangerous and there were no other motorists nearby whose safety was jeopardized by this act.  Additionally, this single movement whereby the left wheels of [appellee]'s vehicle briefly drifted into an adjacent lane of traffic is insufficient to show that [appellee] "changed lanes" or had an intent to change lanes which would require the use of a turn signal.  There was no violation of the Texas Transportation Code observed by Sgt. Hall and there were no other facts observed by Sgt. Hall which gave Sgt. Hall reasonable suspicion to stop [appellee].

The State appeals.

## DISCUSSION

The State argues Sergeant Hall had reasonable suspicion to stop appellee based upon an objective view of the totality of the circumstances and the trial court erred in its application of the law of search and seizure.  We disagree.

The Fourth Amendment to the United States Constitution permits a police officer to stop and briefly detain a person for investigative purposes if the officer has reasonable suspicion to believe the person is violating the law.  *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *see also Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982) (holding investigative detention justified by police officer's observation of traffic violation).  Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably conclude that a particular person is, has been, or soon will be engaged in unlawful activity.

*Ford*, 158 S.W.3d at 492. This standard looks solely to whether an objective basis for the stop exists under the totality of the circumstances. *Id.* at 492–93.

We review the totality of the circumstances in the light most favorable to the trial court's ruling. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008). When the trial court makes explicit findings of fact, we determine whether the evidence supports those findings when viewed in the light most favorable to the trial court's ruling. *Id.* We review the trial court's legal ruling de novo, and we will uphold the ruling if the record supports it and if it is correct under any applicable theory of law. *Id.*

Here, the trial court considered Sergeant Hall's testimony and viewed the video recording from Sergeant Hall's dash video camera. Sergeant Hall received a call from the emergency dispatcher regarding a white Dodge pickup being driven westbound on Interstate 10 by an older man. A caller reported to emergency dispatch that the driver of the pickup was having difficulty maintaining a lane and was weaving in and out of traffic. Emergency dispatch relayed the tip to Sergeant Hall, who positioned his vehicle near mile marker 504 and activated his dash video camera. When Sergeant Hall saw the pickup drive by, he began following it. Sergeant Hall testified he observed appellee's pickup straddle the white center stripe dividing the two westbound lanes of Interstate 10 and drift into the left lane and then back into the right lane without signaling. Sergeant Hall testified failing to signal when "changing lanes" constituted a violation of the Transportation Code.

Sergeant Hall also testified the pickup did not veer into oncoming traffic because a wide, grassy median separated the eastbound and westbound lanes of the highway. During the State's direct examination, Sergeant Hall stated the pickup straddled the white center stripe multiple times. However, during cross-examination, Sergeant Hall agreed that the video recording only

shows the pickup straddle the line once. In fact, the video recording from Sergeant Hall's dash video camera shows the left wheels of appellee's pickup briefly move into the left westbound lane and then correct, moving back into the right lane. When appellant's trial counsel asked Sergeant Hall, "[O]n the video, would you agree with me that there appears to be one instance of [appellee] straddling the lane?" Sergeant Hall responded, "In what we saw, I do agree with that. That was east of the 501 [mile marker]."

Sergeant Hall testified he believed the pickup's movements were dangerous to other cars and trucks on the road. However, he conceded appellee did not speed or get too close to another vehicle, and appellee promptly signaled and pulled over when Sergeant Hall activated his overhead lights. Sergeant Hall testified he did not observe any other vehicles on the highway take evasive action as a result of the pickup's movements.

Law enforcement "generally cannot rely alone on a police broadcast of an anonymous phone call to establish reasonable suspicion." *Hall v. State*, 74 S.W.3d 521, 525 (Tex. App.—Amarillo 2002, no pet.) (quoting *Garcia v. State*, 3 S.W.3d 227, 234–35 (Tex. App.—Houston [14th Dist.] 1999), *aff'd*, 43 S.W.3d 527 (Tex. Crim. App. 2001)). Because an anonymous call cannot alone establish reasonable suspicion to stop appellee, the trial court must look to whether Sergeant Hall observed facts sufficient to justify the stop. Based on its ruling and express findings of fact, it is evident that the trial court did not agree with Sergeant Hall that appellee's actions violated the Transportation Code or endangered other motorists. Because the trial court is in the best position to evaluate witness testimony and resolve any conflicts in the evidence, we must defer to the trial court's findings of fact if they are supported by the record. *Iduarte*, 268 S.W.3d at 548 (affording "a great deal of deference to a trial judge's rulings on questions of historical fact"); *see also Castro v. State*, 227 S.W.3d 737, 743–44 (Tex. Crim. App. 2007) ("The

determination of whether a driver signaled a lane change is a simple one. The only two possibilities in this case are: either the trial judge believed [the police officer's] testimony . . . or the trial judge did not believe that the driver was observed changing lanes without signaling. . . . The trial judge was in the best position to observe the credibility and demeanor of the [police officer] . . . .").

Although Sergeant Hall testified appellee's pickup straddled the white center stripe multiple times, he stated he agreed with defense counsel that the video recording only shows the pickup straddle the line once. The video recording does not show appellee's pickup drift completely into the left lane, but rather only shows the pickup's left tires cross the center stripe. Therefore, there is evidence in the record to support the trial court's finding that the "single movement whereby the left wheels of [appellee]'s vehicle drifted into an adjacent lane of traffic is insufficient to show that [appellee] 'changed lanes' or had an intent to change lanes which would require the use of a turn signal." Because the trial court's ruling is supported by the record, we conclude the trial court did not err by granting appellee's motion to suppress.

## CONCLUSION

We overrule appellant's issues on appeal and affirm the trial court's order.

Sandee Bryan Marion, Justice

Do Not Publish