

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00049-CR

**LESLEY GENE DAHN,**

           **Appellant**

 **v.**

**THE STATE OF TEXAS,**

           **Appellee**

### From the 249th District Court
### Johnson County, Texas
### Trial Court No. F45329

## MEMORANDUM OPINION

Leslie Gene Dahn was convicted of the offense of possession of a controlled substance more than one gram but less than four grams and sentenced as a habitual offender to thirty years in prison. TEX. HEALTH & SAFETY CODE ANN. § 481.115 (West 2010). Dahn complains that the trial court erred by denying his motion to suppress evidence because no reasonable suspicion existed for the officer to have initiated the traffic stop that led to the discovery of the commission of this offense. Because we find

that the trial court did not err by denying the motion to suppress, we affirm the judgment of the trial court.

*The Facts*

At approximately 5:00 p.m., an officer was patrolling a neighborhood that had experienced a recent increase in burglaries and mailbox thefts, which commonly occurred during the daytime hours. The officer was very familiar with the area. While patrolling, the officer observed a white Corvette that he had never seen before sitting near the road on a driveway facing a house approximately 50 yards up the driveway. The Corvette was parked next to that home's mailbox. No other vehicles were present at the residence. The officer found it odd that the vehicle was stopped where it was in the direction it was facing if the occupants were legitimately at the residence because of the length of the driveway, which would have provided a way to turn around to come out facing the road. The officer passed the home and turned around a corner to observe the Corvette and to run a license check. The officer observed the passenger of the vehicle, later found to be Leslie Dahn, and felt that Dahn stared at him suspiciously as he passed by the driveway. The license check showed that the vehicle was registered to an out-of-county address.

The Corvette backed out of the driveway and drove toward the officer; however, the Corvette turned left onto the street where the officer had turned right. The officer turned around and began following the Corvette, which turned almost immediately

into a neighborhood which consisted of a series of cul-de-sacs and ended in a dead end. The Corvette used its indicator at an intersection and then did not turn, but continued and turned at the next intersection onto a cul-de-sac. At this point, the officer activated his lights and effectuated a traffic stop.

Upon making contact with Robert Thomas,[1] who was the driver of the Corvette, and later Dahn, the officer discovered that each of them had active warrants. A search incident to arrest was conducted on Dahn and Thomas and a small baggie of methamphetamine, a driver's license for a woman from Fort Worth, and a blank Texas ID were found on Thomas. Additional methamphetamine; cocaine; nitroglycerin; a notebook containing names, dates of birth, social security numbers, and driver's license numbers of three people; two laptop computers with a printer and a magnetic stripe reader; assorted checks, credit cards, and gift cards; plastic baggies; and syringes were all found in the vehicle in a search conducted after Dahn and Thomas were arrested.

Dahn and Thomas each filed pretrial motions to suppress evidence contending that the officer lacked reasonable suspicion to initiate the traffic stop. The arresting officer was the sole witness and the trial court denied the motions, which were heard jointly. Dahn then pled guilty and the trial court certified that he had the right to appeal the denial of the motion to suppress.

---

[1] *See Thomas v. State*, No. 10-12-00036-CR & 10-12-00037-CR, 2012 Tex. App. LEXIS _____ (Tex. App.—Waco Dec. 6, 2012, no pet. h.).

*Standard of Review*

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's ruling on those questions de novo. *Amador*, 221 S.W.3d at 673; *Johnson*, 68 S.W.3d at 652-53.

When reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204

S.W.3d at 818-19.  We then review the trial court's legal ruling de novo unless its explicit findings that are supported by the record are also dispositive of the legal ruling.  *Id.* at 819.

*Reasonable Suspicion*

An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law.  *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997) (*citing Terry v. Ohio*, 392 U.S. 1, 29, 88 S. Ct. 1868, 20 L. Ed.2d 889 (1968)).  Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity.  *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007).  Otherwise stated, those specific, articulable facts must show unusual activity, some evidence that connects the detained individual to the unusual activity, and some indication that the unusual activity is related to crime.  *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011).  This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists.  *Ford*, 158 S.W.3d at 492.  It also looks to the totality of the circumstances; those circumstances may all seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified.  *Derichsweiler*,

348 S.W.3d at 914. The relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular noncriminal acts. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); *see also Curtis v. State*, 238 S.W.3d 376, 379 (Tex. Crim. App. 2007).

The totality of the circumstances includes the police officers' training and experience. *State v. Alderete*, 314 S.W.3d 469, 473 (Tex. App.—El Paso 2010, pet. ref'd). Accordingly, "when innocent facts, meaningless to the untrained, are used by trained law-enforcement officers, those facts, combined with permissible deductions therefrom, may form a legitimate basis for suspicion of criminal activity." *Id*. Other factors that courts may consider, although perhaps insufficient standing alone, include whether the temporary detention occurred in an area known for having higher rates of crime and whether the person stopped is displaying nervous or evasive behavior. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

The trial court's fact findings included that the neighborhood where the Corvette was parked was in a high crime area known for burglaries and mail thefts which had been recently increasing, particularly in the daytime; that Dahn appeared concerned about the officer's appearance; the vehicle was registered out of county in Fort Worth; the Corvette backed out of the driveway; and the Corvette turned onto a dead-end road. We find that the record supports these fact findings.

Based on our review of the evidence, we conclude that trial court's fact findings support the trial court's determination that the totality of the circumstances gave rise to a reasonable suspicion that Dahn was about to engage in criminal activity. The facts known to the officer were sufficient to suggest that something of an apparently criminal nature was brewing. *Derichsweiler*, 348 S.W.3d at 917. Therefore, the officer had reasonable suspicion to stop Dahn and to detain him for investigative purposes. *Id*. at 914. The trial court did not err in denying Dahn's motion to suppress evidence. We overrule Dahn's sole issue.

*Conclusion*

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed December 6, 2012
Do not publish
[CR25]