

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00472-CR

Susan **DONNELL**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 81st Judicial District Court, Wilson County, Texas
Trial Court No. 17-09-238-CRW
Honorable Russell Wilson, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:       Patricia O. Alvarez, Justice
               Irene Rios, Justice
               Beth Watkins, Justice

Delivered and Filed: November 20, 2019

AFFIRMED

Appellant Susan Donnell was charged with possession of methamphetamine. The drug was discovered during a search following a traffic stop for defective equipment and an expired vehicle registration. After the trial court denied her motion to suppress, Donnell entered a plea agreement. The trial court placed her on deferred-adjudication community supervision for three years. On appeal, Donnell contends the trial court erred in denying her motion to suppress. We affirm the trial court's judgment.

**FACTUAL AND PROCEDURAL FACTS**

On June 12, 2018, the trial court heard the motion to suppress. The only witness was Floresville Police Department Officer Billy Herrera. He testified to the following facts.

On March 5, 2015, at approximately 11:30 p.m., he initiated a vehicle stop for defective equipment and an expired vehicle registration. Donnell was driving the vehicle. Her demeanor that evening was "distraught" and "a little agitated." When he asked her questions, she looked away when she spoke to him. From his patrol unit, he checked her driver license and verified she did not have any outstanding warrants. When he returned to her vehicle, he asked Donnell to step out of the vehicle, "[j]ust to have a conversation with her and see what was going on, why she was so nervous." Donnell continued to repeat where she was going—to a friend's house, in Pleasanton, to wash clothes.

Donnell became more agitated, "just real confrontational," and her hands were "trembling pretty bad." Before he asked Donnell for consent to search the vehicle, he asked her "[i]f there was anything—any contraband in the vehicle." At first she denied anything was in the vehicle; then she replied, "it's not my truck . . . who knows?" When he asked Donnell if she saw anything illegal in the vehicle, she replied, "I mean—I don't know. . . . There could be, yes, for all I know." He described Donnell as being unusually agitated by being asked for consent to search her vehicle.

At first Donnell stated, "go ahead," but then withdrew her consent. Officer Herrera told Donnell that if she denied consent, he would call for a K-9 unit to search the vehicle. Donnell replied, "go ahead." He told Donnell "that she was in possession of the vehicle and she could give [him] consent to search." He "asked her if [he] could do a search and she said yes." He again told Donnell that she could withdraw her consent at any time.

During his search of the vehicle, he located a small amount of methamphetamine in the center console of the vehicle. After he gave Donnell a *Miranda* warning, he asked her about the

methamphetamine. Donnell acknowledged the methamphetamine belonged to her. The officer's dash camera video recording was played for the trial court. The time from when Officer Herrera initiated the stop until he discovered the methamphetamine was less than twelve minutes.

On cross-examination, Officer Herrera reiterated it was Donnell's extreme nervousness that caused him concern. He explained that Donnell's level of agitation was greater than he sees on a regular basis when conducting traffic stops.

The trial court denied the motion to suppress and Donnell entered a plea of no contest. The trial court deferred a finding of guilt and placed Donnell on deferred-adjudication community supervision for three years.

On appeal, Donnell contends the trial court erred by denying her motion to suppress.

### MOTION TO SUPPRESS

### A.     Standard of Review

"We review a trial court's denial of a motion to suppress under a bifurcated standard of review. We review the trial court's factual findings for an abuse of discretion, but [we] review the trial court's application of law to the facts *de novo*." *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013) (citation omitted) (citing *Valtierra v. State*, 310 S.W.3d 442, 447–48 (Tex. Crim. App. 2010)). "The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony." *Valtierra*, 310 S.W.3d at 447. "When the trial court fails to make explicit findings of fact, we imply fact findings that support the trial court's ruling so long as the evidence supports these implied findings." *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007); *accord Turrubiate*, 399 S.W.3d at 150. We give "[a]lmost total deference . . . to the trial court's implied findings, especially those based on an evaluation of witness credibility and demeanor." *Turrubiate*, 399 S.W.3d at 150; *accord Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013).

**B.      Shifting Burdens**

In a motion to suppress evidence based on an alleged Fourth Amendment violation, "the defendant bears the initial burden of producing evidence rebutting the presumption of proper police conduct.  A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant."  *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (footnote omitted); *State v. Hneidy*, 510 S.W.3d 458, 462 (Tex. App.—San Antonio 2013, pet. ref'd).  "Once the defendant has made this showing, the burden of proof shifts to the State where it is required to establish that the search or seizure . . . was reasonable."  *Ford*, 158 S.W.3d at 492 (citing *Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002)); *accord Hneidy*, 510 S.W.3d at 462.

**C.      Reviewing Reasonable Suspicion**

Reasonable suspicion is determined under the totality of the circumstances.  *See Arguellez v. State*, 409 S.W.3d 657, 663 (Tex. Crim. App. 2013); *Ford*, 158 S.W.3d at 493; *Hneidy*, 510 S.W.3d at 463.  "Whether there was reasonable suspicion to detain [the defendant] is not a function of [the officer's] demeanor or credibility, but of the legal significance of the essentially uncontested facts."  *Leming v. State*, 493 S.W.3d 552, 562 (Tex. Crim. App. 2016) (citing *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007)).  If the trial court's ruling "is correct under any applicable theory of law," it must be sustained.  *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018).

**D.      Parties' Arguments**

Donnell argues that before the search, the stop's mission was complete, and Officer Herrera had no grounds to threaten a K-9 unit search or to seize Donnell under threat of a K-9 unit search.

The State counters that Officer Herrera had reasonable suspicion to detain Donnell during the time he questioned her, and Donnell consented to the search of the vehicle.

**E.     Requirements for Reasonable Suspicion**

The Fourth Amendment protects against unreasonable searches without a warrant.  U.S. CONST. amend. IV; *Terry v. Ohio*, 392 U.S. 1, 20 (1968).  "[N]ecessarily swift [police] action predicated upon the on-the-spot observations of the officer . . . must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures." *Terry*, 392 U.S. at 20; *see also Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36–37 (Tex. Crim. App. 2017).  "[C]ontinuing a brief investigatory detention beyond the time necessary to conduct a traffic stop requires reasonable suspicion of criminal activity apart from the traffic violation." *Ramirez-Tamayo*, 537 S.W.3d at 36.  "[T]here is 'no ready test for determining reasonableness other than by balancing the need to search . . . against the invasion which the search . . . entails.'" *Terry*, 392 U.S. at 21 (quoting *Camara v. Mun. Court*, 387 U.S. 523, 534–35, 536–37 (1967)).

To justify the reasonableness of an officer's conduct, an officer "must have specific, articulable facts that, when combined with rational inferences therefrom, lead [the officer] to reasonably conclude that a particular person actually is, has been, or soon will be, engaged in criminal activity." *Arguellez*, 409 S.W.3d at 663 (citing *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007)); *see Ford*, 158 S.W.3d at 492.  The court assesses the reasonableness of police conduct under "an objective standard that disregards the officer's subjective motive or intent and 'looks solely to whether an objective basis for the stop exists' based on the totality of the circumstances." *Hneidy*, 510 S.W.3d at 462–63 (quoting *Ford*, 158 S.W.3d at 492); *accord Arguellez*, 409 S.W.3d at 663 ("This standard is objective, thus there need be only an objective basis for the stop; the subjective intent of the officer is irrelevant.").

**F.     Analysis**

Here, Donnell's vehicle was searched without a warrant.  Therefore, we must determine whether the State established that Officer Herrera's search of Donnell's vehicle was reasonable.

*See Ford*, 158 S.W.3d at 492. Thus, the dispositive question is whether Officer Herrera possessed "specific, articulable facts that, when combined with rational inferences therefrom, lead him to reasonably conclude" Donnell had been, was, or was about to be, engaged in criminal activity. *See Arguellez*, 409 S.W.3d at 663 (citing *Castro*, 227 S.W.3d at 741); *Hneidy*, 510 S.W.3d at 462–63.

At the suppression hearing, the trial court was able to see the officer testify and view the dash camera video recording of the entire exchange between Officer Herrera and Donnell. Officer Herrera testified he initiated the stop of Donnell's vehicle based on defective equipment and an expired vehicle registration. Officer Herrera, an officer with over seven years on the police force, testified Donnell was extremely agitated and nervous, and her hands were trembling badly. He explained that many individuals are nervous when stopped by an officer; however, the level of nervousness exhibited by Donnell was unusual and indicated that something was amiss.

Officer Herrera testified that Donnell's version of where she was traveling did not make sense. Donnell reported she was traveling from Karnes City to Pleasanton, over an hour's drive, to do her laundry. Officer Herrera pointed out that Donnell passed several laundromats along the way at which Donnell could have washed her clothes. Additionally, Officer Herrera testified, that in his experience, Donnell's refusal to look at him when she spoke was indicative of her trying to hide something.

Although no single observation is dispositive, we must determine whether the trial court could have reasonably determined that Officer Herrera had "specific, articulable facts that, when combined with rational inferences therefrom, lead him to reasonably conclude that [Donnell was, had been, or soon would be] engaged in criminal activity." *See Aguellez*, 409 S.W.3d at 663.

## CONCLUSION

Having reviewed all the evidence and the totality of the circumstances, we conclude the trial court could have determined that Officer Herrera had reasonable suspicion to suspect Donnell

had been, was, or would be engaged in criminal activity.  Thus, the trial court did not err by denying the motion to dismiss.

We affirm the trial court's judgment.

Patricia O. Alvarez, Justice

DO NOT PUBLISH